UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------

**JUDE E. OZUZU,**

                          Plaintiff,

        -against-

**GREENPOINT MORTGAGE FUNDING,
CAPITAL ONE (USA), NA, VFC PARTNERS
26, LLC, FIRST CITY SERVICING
CORPORATION, BNH CALEB 14, LLC, R.B.
DIFFENDERFFER, JEFFREY M. JULIANE,
STEPHEN DAMORE, KATHY MCNAIR,
DWAIN MOSS, STEVE HACKEL, HARRY
ZUBLI,**

                      Defendants.

--------------------------------------------------------

**MEMORANDUM DECISION
AND ORDER**
19-CV-03783 (AMD) (SMG)

**ANN M. DONNELLY,** United States District Judge:

On June 28, 2019, the plaintiff filed this action *pro se* alleging that the defendants

committed multiple acts of "fraud and theft" while conspiring to foreclose unlawfully the

mortgage on his residential property located at 2846 West 36th Street, Brooklyn, NY 11236.

(ECF No. 1 ¶ 1.)  These allegations stem, in part, from two foreclosure actions filed in the

Supreme Court of Kings County, one of which is still pending (Index No. 505322/2016).  In

November of 2019, the plaintiff retained counsel and on December 2, 2019, filed an Order to

Show Cause seeking a temporary restraining order, a preliminary injunction and a stay of the

state court proceedings.  (ECF Nos. 35-37.)  After a hearing on December 4, 2019, I granted the

TRO, which restrained and enjoined the defendants from proceeding with the sale of the

plaintiff's property until my decision on the preliminary injunction and motion to stay.

On December 20, 2019, the plaintiff filed his second amended complaint alleging that the

defendants committed fraud and conspiracy in violation of the New York General Business Law

§ 349, the Civil RICO Act, 18 U.S.C. § 1964, the Emergency Disaster Relief Act, 42 U.S.C. § 5170(a), the Fair Housing Act, 42 U.S.C. § 3631, and 18 U.S.C. §§ 241-42.  (ECF No. 43 ("SAC") ¶ 1.)  The defendants have moved to dismiss the SAC.  (ECF Nos. 50, 55, 57.)  For the reasons that follow, the defendants' motions are granted, and the plaintiff's motion for a preliminary injunction is denied.

## BACKGROUND[1]

On April 18, 2006, the Plaintiff purchased a six-family commercial residential dwelling at 2846 West 36th Street on Coney Island and executed a promissory note for $525,000.00 with defendant Greenpoint Mortgage Funding ("Greenpoint") secured by a mortgage on the property.  (SAC ¶ 21.)  In 2007, Greenpoint closed its mortgage business and defendant Capital One, USA, N.A. ("Capital One"), took over as servicer of the plaintiff's mortgage.  (*Id*. ¶ 22.)

On October 29, 2012, Hurricane Sandy destroyed the property.  (SAC ¶ 24.)  The plaintiff had "current flood and hazard insurance policies" and "filed claims with the insurance providers for funds to rehabilitate the damaged property."  (*Id*.)  He alleges that he also was entitled to receive "emergency funds" as a result of the storm damage.  (*Id*. ¶ 25)

On June 6, 2013, defendant R.B. Diffenderffer, a Vice President at Capital One with authority to transfer non-performing loans in the Greenpoint portfolio, assigned the plaintiff's mortgage to defendant VFC Partners 26 ("VFC Partners").  (SAC ¶¶ 25-26.)  The plaintiff

---

[1] All facts are taken from the SAC and its attachments.  For purposes of this motion, I accept as true the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *See Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012).  In addition, I take judicial notice of the existence and content of the relevant records of the New York State courts, many of which have been placed before this Court by the parties.  *See Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 502 n.1 (S.D.N.Y. 2016) ("In deciding a motion to dismiss under Rule 12(b)(6), a court can take judicial notice of court documents.") (collecting cases).

contends that his loan should not have been classified as "non-performing" because he had made all his mortgage payments. (*Id.* ¶ 26.)  According to the plaintiff, "Greenpoint and Diffenderffer were aware that [the] [p]laintiff and the Property were entitled to emergency funds from Hurricane Sandy, which would be interfered with to the benefit of any new owner if the mortgage were falsely labeled as non-performing." (*Id.* ¶ 25.)

The plaintiff continued to make payments on his mortgage after the assignment to VFC Partners. (*Id.* ¶ 27.)  On July 31, 2013, defendant Kathy McNair, a Vice President at defendant First City Servicing Corporation ("First City"), the parent company of VFC Partners, assigned the plaintiff's mortgage to defendant BNH Caleb 14 ("BNH"). (*Id.* ¶¶ 8, 28.)  Two days later, on August 2, 2013, defendant Harry Zubli, a licensed attorney and a principal of BNH, sent a letter to the plaintiff informing him that his mortgage was in default as of May 1, 2013. (*Id.* ¶¶ 16, 29.)  By letter dated August 19, 2013, Zubli informed the plaintiff that he had accelerated the mortgage and demanded immediate payment in full—over $500,000; the plaintiff argues that this acceleration was unwarranted because his payments were current and up to date. (*Id.*)  Although Zubli accepted the plaintiff's mortgage payments for August and September of 2013, he refused the plaintiff's October payment. (*Id.* ¶¶ 16, 32.)

The plaintiff alleges that he "stopped receiving the insurance proceeds for repairs and restoration" of the property because the defendants represented his mortgage as "non-performing." (SAC ¶ 30.)  Moreover, Zubli represented to District Judge Shira Scheindlin at a bond hearing on October 1, 2013, that the plaintiff's mortgage was in default and that he had

commenced foreclosure proceedings in the state court.  (*Id*. ¶ 31.)[2]  As a result, the plaintiff could not use his property as collateral for a surety bond for a family member.  (*Id*.)

On June 9, 2014, BNH commenced a foreclosure action against the plaintiff in the Supreme Court for Kings County, Index No. 505312/2014.  (SAC ¶ 34.)  BNH moved for summary judgment, which the court denied on April 22, 2015, because BNH had not established any basis for accelerating the mortgage note.  (*Id*. ¶ 38.)  On August 10, 2015, BNH moved to dismiss the action without prejudice, to cancel the prior acceleration of the plaintiff's mortgage and to reinstate the mortgage loan.  (*Id*.)  The motion was granted over the plaintiff's objections to the reinstatement of the mortgage.  (*Id*. ¶ 39-40.)  The plaintiff alleges that he was denied the right to appeal this decision after Zubli "manufactured" the plaintiff's default.  (*Id*. ¶ 40.)

After dismissing the first foreclosure action, BNH offered to reinstate the plaintiff's loan if he could make the missed payments of principal and interest that had accrued since October of 2013.  Memorandum and Order, *BNH Caleb 14 v. Jude E. Ozuzu, et al.*, Index No. 505322/2016, at 5 (Sup. Ct. N.Y. July 27, 2018) (ECF No. 50-14).  The plaintiff did not make any payments, and, on February 5, 2016, BNH again accelerated the mortgage.  *Id*.

On April 7, 2016, BNH filed a new foreclosure action against the plaintiff.  (SAC ¶ 40.) The plaintiff moved to dismiss that action; he argued that BNH had not adequately alleged its ownership of the mortgage and had not established that the loan was in default when it filed the second foreclosure action.  (ECF No. 49-9 ¶¶ 8, 10.)  According to the plaintiff, BNH was "using the signatory of this honorable court to perfect an illegal foreclosure action," as evidenced by the

---

[2] The plaintiff submitted the transcript from October 1, 2013 hearing before Judge Scheindlin as an exhibit to his motion to dismiss the 2016 Foreclosure action.  Exhibit F to Motion #1, *BNH Caleb 14 v. Jude E. Ozuzu, et al.*, Index No. 505322/2016 (Sup. Ct. N.Y. June 15, 2016).  Zubli informed Judge Scheindlin that the loan was in default, the mortgage had been accelerated, and Zubli would commence a foreclosure action unless the plaintiff paid the note in full.  (*Id*. at 23:17-19.)

fact that the signature on the mortgage assignment from Greenpoint to VFC Partners "is forged and fraudulent," there was an "irregularity as to the mode of acquisition of this mortgage loan" by BNH and Zubli, and that BNH "has no intention of being a private lender, never intended to service loans, but acquire[s] [loans] for the purpose of foreclosure to make profit." (ECF No. 49-9 ¶¶ 20, 25-28, 36-37.) The plaintiff further argued that the amount that BNH claimed was owed on the loan was "inconsistent with Greenpoint financial records, dates, mortgage payments," and that BNH filed the second foreclosure action while the first was still pending. (ECF No. 49-9 at 19-20.) On October 28, 2016, the court denied the motion without prejudice because the plaintiff did not establish that the loan he cited in his exhibits was the same loan referenced in the Note and mortgage. Order, *BNH Caleb 14 v. Jude E. Ozuzu, et al.*, Index No. 505322/2016 (Sup. Ct. N.Y. Oct. 28, 2016); (ECF No. 50-2 ¶ 20).

The plaintiff then answered and filed a counterclaim against BNH. (ECF No. 50-12.) As affirmative defenses, the plaintiff alleged that BNH did not present "lawful documentary proof that [it] is the legal owner and holder of the Note and mortgage," nor did it establish that the loan was in default. (ECF No. 50-12 ¶¶ 6-7.) According to the plaintiff, BNH willfully "refused to accept payment despite the fact that payment was offered," and as a result, "the mortgage [was] forfeited and no further monies are owed." (*Id.* ¶ 8.) The plaintiff described BNH's multiple accelerations of the mortgage as "unlawful" (*Id.* ¶ 9), and asserted that the "alleged mortgage should be forfeited and title declared free of the mortgage" because of BNH's "fraudulent activities." (*Id.* ¶ 12.) In addition, the plaintiff alleged that BNH lacked standing to bring the foreclosure action because Greenpoint's assignment of the mortgage was "invalid and void." (*Id.* ¶ 13.) The plaintiff also brought a counterclaim alleging that "[t]he Property was obtained by fraud and deceit by [BNH] and a scheme to defraud the [plaintiff] by false and

misrepresentation;" the plaintiff sought $1.5 million in damages "for the intentional conduct of [BNH] in default of this loan, causing adverse credit reporting and smear to integrity and reputation of the [plaintiff]."  (*Id*. ¶ 24.)

The parties cross-moved for summary judgment, and on July 27, 2018, the court granted BNH's motion and denied the plaintiff's motion.  (ECF No. 50-14.)  The Honorable David B. Vaughan held that BNH had standing to bring the foreclosure action and had established the *prima facie* elements of a foreclosure claim, including that Ozuzu was in default when BNH commenced the action.  (*Id*. at 6.)  The burden then shifted to Ozuzu to raise a triable issue of fact.  (*Id*. at 7.)  Judge Vaughan determined that Ozuzu did not offer "any competent proof to demonstrate that the assignments and/or indorsements were defective or that [BNH] did not otherwise possess the note at the time the action was commenced."  (*Id*. at 7-8.)  Moreover, Ozuzu did not "submit proof to show that he was current on the loan at the time of the commencement of the instant action on April 7, 2016;" instead he "only submit[ted] copies of cancelled checks for the period of January 2013 through September 2013."  (*Id*. at 8.)  Judge Vaughan granted BNH's motion to strike the answer, the affirmative defenses and the counterclaims and to appoint a referee.  (*Id*.)

On May 22, 2019, Judge Vaughan granted BNH's motion for judgment of foreclosure and sale.  (ECF No. 28-27.)  The plaintiff appealed that decision but later agreed to withdraw his appeal in exchange for an additional 65 days to pay off the remaining balance on the mortgage. (*See* ECF No. 50-15.)  The plaintiff filed this action on June 28, 2019.

The SAC alleges ten causes of action.  The first, second, third, and fifth causes of action allege generally and specifically that "Greenpoint conspired with Capital [One], VFC Partners, First City, BNH, Diffenderffer, Juliane, Damore, McNair, Moss, Hackel, Zubli and others" to

"defraud" the plaintiff.  (SAC ¶¶ 46, 52, 58, 74.)  The fourth cause of action alleges that Zubli

breached his fiduciary duty as an attorney by making "false and fraudulent statements," by using

his "influence to deceive and manipulate the judicial system and governmental agencies involved

in Hurricane Sandy relief," and by withholding his conflicts of interest.  (*Id*. ¶¶ 66-69.)  The sixth

cause of action alleges violations of the Fair Housing Act ("FHA") against all defendants (*id*. ¶

79), and the seventh cause of action alleges violations of New York General Business Law

("GBL") § 349 by all defendants.  (*Id*. ¶ 82.)  The eighth cause of action alleges that Greenpoint

breached its fiduciary duty to the plaintiff.  (*Id*. ¶ 85.)  The ninth cause of action seeks a

"declaratory judgement [sic] declaring that the alleged transfers, assignments and sales obtained

are a direct result of the fraudulent scheme and are null and void" and a preliminary injunction

enjoining the defendants "from taking any action to foreclose on the subject premises."  (*Id*. ¶¶

89-90.)  The plaintiff also alleges that the defendants "interfered with an Act of Congress when

they sought to deprive plaintiff, and enrich themselves, of relief available under the Emergency

Disaster Relief Act."  (*Id*. ¶ 91.)  Finally, the tenth cause of action alleges violations of the RICO

Act by "a shadow collection of people, shell companies, and mortgages that used their positions

around Greenpoint and their access to real property equity to perform criminal acts for their

benefit."  (*Id*. ¶ 95.)

The defendants filed three separate motions to dismiss.  Defendants Zubli, BNH and

Hackel moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  (ECF No. 50-20 at

17, 21.)  They argue that the plaintiff's claims are simply a repackaging of the state foreclosure

action and are therefore barred by the *Rooker-Feldman* abstention doctrine and collateral

estoppel.  (*Id*. at 19-20, 23-24.)  Moreover, they argue that the plaintiff cannot sustain his RICO

claim because he has not adequately pleaded the predicate acts required to establish a RICO claim.  (*Id.* at 30.)

Defendants Greenpoint, Capital One, Diffenderfer, Jeffrey M. Juliane and Stephen Damore (collectively, the "Capital One Defendants") also move to dismiss pursuant to Rules 12(b)(1) and 12(b)(6), arguing that the complaint is barred by the *Rooker-Feldman* doctrine and the plaintiff is collaterally estopped from relitigating the issues raised in the state action.  (ECF No. 55-1 at 8, 13, 16.)  To the extent that any claims are not precluded, the Capital One Defendants argue that they must be dismissed for failure to state a claim.  (*Id.* at 22.)  Finally, the Capital One Defendants argue that the plaintiff does not adequately allege the elements of a RICO claim.  (*Id.* at 26.)

Defendant VFC Partners seeks dismissal of the claims against it pursuant to Fed. R. Civ. P. 12(b)(4) and 12(b)(5) alleging that it was not properly served.  (ECF No. 57-1 at 10-11.)  Alternatively, VFC Partners, like the other defendants, seeks dismissal for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine and for failure to state a claim.  (*Id.* at 11.)  VFC Partners further argues that the claims against it are time-barred because it has not had any involvement in the plaintiff's loan since 2013.  (*Id.*)

All defendants assert that the plaintiff's motion for a preliminary injunction is barred by *Rooker-Feldman*, the *Younger* abstention doctrine and the Anti-Injunction Act.  (ECF No. 49-18 at 8; ECF No. 53 at 9; ECF No. 57-1 at 19-20.)

## DISCUSSION

### I.    Standard of Review

"Determining the existence of subject matter jurisdiction is a threshold inquiry," *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247

(2010), and dismissal is proper under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate" the claim. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id*. A court deciding a motion to dismiss pursuant to Rule 12(b)(1) may consider evidence outside of the pleadings, *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986), but must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003).

In order to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleadings are to be construed in the light most favorable to the plaintiff. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

## II.      Subject Matter Jurisdiction

The moving defendants seek dismissal of the SAC for lack of subject matter jurisdiction. (ECF Nos. 50-20, 55-1, 57-1.) They argue that *Rooker-Feldman* precludes federal courts from overturning state court judgments, and therefore, the plaintiff cannot challenge the judgment of foreclosure in federal court. (*See, e.g.*, ECF No. 50-20 at 11.) They also argue that the *Younger* abstention doctrine and the Anti-Injunction Act ("AIA"), 28 U.S.C. § 2283 bar this court from issuing a preliminary injunction enjoining or staying the state court proceedings. (ECF Nos. 53, 49-18, 57-1.)

The plaintiff responds that *Rooker-Feldman* does not apply because he is not challenging the state court's judgment, but rather the methods by which the defendants obtained that judgment.  (ECF No. 59-3 at 22.)  In addition, he argues that the first exception to the Anti-Injunction Act, which applies where "expressly authorized by [an] Act of Congress," 28 U.S.C. § 2283, allows the Court to enjoin the state action while he pursues his RICO claims.  (ECF No. 59-3 at 22.)

### A.      Rooker-Feldman Abstention

The *Rooker-Feldman* abstention doctrine precludes federal district courts from exercising jurisdiction over actions that are really nothing more than appeals from state court judgments. *See Ashby v. Polinsky*, 328 F. App'x 20, 21 (2d Cir. 2009).  "Lower federal courts lack subject matter jurisdiction in 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'"  *McCluskey v. New York State Unified Court Sys.*, 442 F. App'x 586, 589 (2d Cir. 2011) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).  Courts in this Circuit have held consistently that efforts to upset a state court judgment of foreclosure are barred by the *Rooker-Feldman* doctrine.  *See Niles v. Wilshire Inv. Grp.*, *LLC*, 859 F. Supp. 2d 308, 334 (E.D.N.Y. 2012) (collecting cases). In other words, federal courts simply do not have the power to overturn foreclosure decisions made by state courts.

The plaintiff filed his complaint on June 28, 2019—a month after the state court granted the judgment of foreclosure and sale—seeking monetary damages for fraud and deceptive business practices, as well as "rescission of contracts related to [the] financing of plaintiff's property."  (ECF No. 1 ¶¶ 1-2.)  In his SAC, the plaintiff also requests "a declaratory judgement declaring that the alleged transfers, assignments and sales obtained are a direct result of the

fraudulent scheme and are null and void." (SAC ¶ 88.) To the extent that the plaintiff asks this Court to review or nullify the judgment of foreclosure issued by the state court, those claims are barred by *Rooker-Feldman*. *See Riley v. Comm'r of Fin.*, 618 F. App'x 16, 17 (2d Cir. 2015) ("[A]n action seeking a declaration of property ownership after loss of title pursuant to a state-court foreclosure judgment [is] barred by *Rooker-Feldman.*"); *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014) ("To the extent [the plaintiff] asks the federal court to grant him title to his property because the foreclosure judgment was obtained fraudulently, *Rooker-Feldman* bars [the plaintiff's] claim.").

However, the plaintiff seeks relief beyond "rescission" of the mortgage documents and a declaration that the "transfers, assignments and sales" are void. He does not say that the state court judge did anything wrong. Instead, he seeks monetary damages for injuries caused by what he says are the defendants' pre-judgment actions. These claims do not require the Court to "review and reject the state foreclosure judgment," and are not premised on any injuries "caused by" the judgment itself; therefore, they are not barred by *Rooker-Feldman. See Graham*, 156 F. Supp. 3d at 507-08 (holding that *Rooker-Feldman* did not bar claims sounding in, among other things, fraud and deceptive business practices against the loan servicer).

### B.    Younger Abstention

While *Rooker-Feldman* is not a complete bar to relief, the *Younger* abstention doctrine bars the plaintiff's request for a preliminary injunction because the plaintiff is asking this Court to interfere in a state court proceeding. Just as the federal district courts are barred from reviewing and reversing decisions of the state court under *Rooker-Feldman*, they are barred from enjoining state court proceedings under the *Younger* abstention doctrine. *Younger v. Harris*, 401 U.S. 37, 43-45 (1971); *see also Hansel v. Town Court*, 56 F.3d 391, 393 (2d Cir. 1995) (*Younger* applies to claims for injunctive and declaratory relief). "The defining feature of *Younger*

abstention is that even though either a federal or a state court could adjudicate a given claim, when there is an ongoing state proceeding in which the claim can be raised, and when adjudicating the claim in federal court would interfere unduly with the ongoing state proceeding, the claim is more appropriately adjudicated in state court." *Kirschner v. Klemons*, 225 F.3d 227, 236 (2d Cir. 2000). *Younger* abstention is triggered by three categories of state court proceedings: (1) "state criminal prosecutions," (2) "civil enforcement proceedings," and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013).

The third prong of the *Sprint* rationale applies to this set of facts. "[F]ederal court intervention in an ongoing state foreclosure proceeding . . . [is] generally barred by *Younger v. Harris*." *Fequiere v. Tribeca Lending*, No. 14-CV-0812, 2015 WL 1412580, at *7 (E.D.N.Y. Mar. 20, 2015) (quoting *Marcelo v. EMC Mortg. Corp.*, 2011 WL 1792671, at *4 (E.D.N.Y. May 6, 2011)). The plaintiff seeks injunctive relief with respect to the property that is the subject matter of the underlying state court actions. The plaintiff's remedies are therefore limited to state court—either in the original venue, or on appeal to the state appellate court. *See Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 437 (1982) ("It would trivialize the principles of comity and federalism if federal courts failed to take into account that an adequate state forum for all relevant issues has clearly been demonstrated to be available prior to any proceedings on the merits in federal court."). Thus, *Younger* abstention bars the plaintiff's motion for a preliminary injunction that enjoins the defendants from selling the property or that stays the state court proceedings.

## C. Anti-Injunction Act

The plaintiff's request for injunctive relief is also precluded by the AIA, which provides that: "A court of the United States may not grant an injunction to stay proceedings in a State

court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. This provision applies when the requested injunction would either stay the ongoing state proceedings or prevent the parties from enforcing an order that has already issued. *See Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 294 (1970). The plaintiff wants to do both— stay the state foreclosure action and enjoin the foreclosure sale ordered by the state court. (*See* ECF No. 37 at 7.)

The plaintiff argues that his claims invoke federal statutes and thus fall under the first exception to the AIA. (ECF Nos. 37, 59-3.)[3] But the mere existence of a federal claim does not, by itself, allow the Court to disregard the AIA's limitations to federal jurisdiction. *See Mitchum v. Foster*, 407 U.S. 225, 237 (1972). Rather, "in order to qualify as an 'expressly authorized' exception to the anti-injunction statute, an Act of Congress must have created a specific and uniquely federal right or remedy, enforceable in a federal court of equity, that could be frustrated if the federal court were not empowered to enjoin a state court proceeding." *Id*. The plaintiff's RICO claim does not meet this test. *See, e.g.*, *Ocampo v. Countrywide Home Loans, Inc.*, No. 3:19-CV-00436, 2020 WL 1532392, at *6 (D. Conn. Mar. 31, 2020) (declining to stay a state court foreclosure proceeding despite the plaintiff's RICO claims).

Nor does the plaintiff establish that an injunction of the foreclosure action is necessary to aid this Court's jurisdiction of the plaintiff's federal claims, or "to protect or effectuate its judgments." 28 U.S.C. § 2283. Therefore, the plaintiff's motion for a preliminary injunction is barred by the Anti-Injunction Act. *See Ungar v. Mandell*, 471 F.2d 1163, 1165 (2d Cir. 1972)

---

[3] The plaintiff appears to have abandoned his earlier argument that all three prongs of the AIA allow for a stay of the state court proceedings in this matter (*see* ECF No. 37); he argues only the first prong in opposing the defendants' motions to dismiss (*see* ECF No. 59-3 at 26).

(holding that the Anti-Injunction Act did not permit injunction of state court foreclosure proceeding); *Abbatiello v. Wells Fargo Bank N.A.*, No. 15-CV-4210, 2015 WL 5884797 (E.D.N.Y. Oct. 8, 2015) (same, collecting cases).

## III.     Service of Process

### A.     VFC Partners

VFC Partners alleges that the claims against it should be dismissed pursuant to Fed. Rule Civ. P. 12(b)(4) and 12(b)(5) because it was not adequately served with process, and that process was defective because it did not contain an acknowledgement of receipt as required by N.Y. C.P.L.R. § 312-A.  (ECF No. 57-1 at 16-17.)  After Magistrate Judge Scanlon issued an order warning the plaintiff that some of the defendants would likely be dismissed under Rule 4(m) for failure to make timely service of the amended complaint, the plaintiff filed a proof of service as to VFC Partners on December 4, 2019.  (ECF No. 40.)  The affidavit of service states that VFC Partners was personally served at 45 Rockefeller Center, Suite 2000 in New York, New York, and that the summons and amended complaint were mailed to Trimont Real Estate Asset Management (Trimont) at the New York address and at the corporate headquarters in Atlanta, Georgia.  (*Id.*)  The plaintiff filed another proof of service on April 15, 2020, which states that the process server personally served both VFC Partners and First City at the New York address and mailed the SAC to both entities at the New York and Georgia addresses on March 24, 2020. (ECF No. 65.)

Service on a corporate entity can be effected in three ways: (1) pursuant to the law of the state in which the district court is located, (2) pursuant to the law of the state where service is actually made, or (3) by "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by

14

also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1).  Under New York law, a

corporation may be served by delivering the summons to "an officer, director, managing or

general agent, or cashier or assistant cashier or to any other agent authorized by appointment or

by law to receive service."  N.Y. C.P.L.R. § 311(a)(1).  Alternatively, service can be made by

"mailing to the person or entity to be served, by first class mail, postage prepaid, a copy of the

summons and complaint, or summons and notice or notice of petition and petition, together with

two copies of a statement of service by mail and acknowledgement of receipt . . . with a return

envelope, postage prepaid, addressed to the sender."  N.Y. C.P.L.R. § 312-a.

"When a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden

of proving adequate service."  *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010)

(quoting *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005)).  To determine whether

the plaintiff has met his burden, the Court "may look beyond the pleadings, including to

affidavits and supporting materials, to determine whether it has jurisdiction and service was

proper."  *Jordan-Rowell v. Fairway Supermarket*, No. 18-CV-01938, 2019 WL 570709, at *5

(S.D.N.Y. Jan. 16, 2019) (quoting *Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*,

No. 14-CV-1112, 2018 WL 4757939, at *3 (S.D.N.Y. Sept. 30, 2018)), *report and*

*recommendation adopted*, 2019 WL 568966 (S.D.N.Y. Feb. 12, 2019).

VFC Partners argues that the mailed summons was ineffective because it was addressed

to the wrong entity and did not contain the acknowledgement of receipt required by New York

law.  (ECF No. 57-1 at 13-17; ECF No. 62 at 6-7.)  However, even if VFC Partners is correct

that service by mail was ineffective, they have presented no challenge to the plaintiff's personal

service of VFC Partners.  The plaintiff submitted two affidavits of service attesting to personal

service on VFC Partners at 45 Rockefeller Center; a "Senior Associate" at Trimont told the

plaintiff that VFC Partners and Trimont had "merged," and that 45 Rockefeller Center was the firm's address.  (ECF No. 40; ECF No. 65; ECF No. 59 ¶¶ 2-4.)  As VFC Partners has raised no challenge to personal service, I have no basis to find that such service was defective.  *See Link Grp. Int'l, L.L.P. v. Toymax (H.K.) Ltd.*, 127 F. Supp. 2d 280, 285 (D. Conn. 2000) ("New York courts have embraced a more flexible approach to personal service upon corporations," allowing service upon a corporate employee who then "redelivers" the summons to a person authorized to accept service); *Melkaz Int'l Inc. v. Flavor Innovation Inc.*, 167 F.R.D. 634, 642 (E.D.N.Y. 1996) (courts have "interpreted the concept of redelivery to support the validity of service upon a corporation's receptionist or secretary") (collecting cases).  Accordingly, VFC Partner's motion to dismiss pursuant to Rules 12(b)(4) and 12(b)(5) is denied.

### B.      First City, Kathy McNair and Dwain Moss

Fed. R. Civ. P. 4(m) provides, in relevant part, that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Despite an order from the Court directing the plaintiff to serve First City, McNair and Moss and file proof of service no later than December 4, 2019, the plaintiff did not file proof of service as to these defendants by that date.  Although the plaintiff attempted service of the SAC on First City, the proof of service is dated more than 90 days after the filing date of the SAC and appears to have been sent to the same New York and Georgia addresses as that of VFC Partners, despite the fact that the SAC alleges that First City is "based in Waco, Texas," and the plaintiff offers no evidence that First City is located at either the New

York or Atlanta addresses.  (SAC ¶ 8; ECF No. 65.)[4]  The record contains no evidence that the plaintiff ever served McNair or Moss.  Accordingly, First City, McNair, and Moss are dismissed without prejudice.

## IV.      Rule 12(b)(6)

### A.      Preclusion

To the extent that the plaintiff's claims are not barred by the *Rooker-Feldman* doctrine, the defendants argue that the SAC must be dismissed because state court judgment precludes the plaintiff's claims under the principles of claim preclusion and issue preclusion.  (ECF Nos. 50-20, 55-1, 57-1.)  I agree that most of the plaintiff's claims are precluded and must be dismissed.

#### 1.      Collateral Estoppel

Federal courts "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."  *Jenkins v. City of New York*, 478 F.3d 76, 85 (2d Cir. 2007) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)).  Under New York law, issue preclusion, also known as collateral estoppel, has two elements: "First, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination."  *Jenkins*, 478 F.3d at 85 (quoting *Matter of Juan C. v. Cortines*, 89 N.Y.2d 659, 667 (N.Y. 1997)).  Put differently, the doctrine of issue preclusion "precludes a party from relitigating . . . an issue clearly raised in a prior action . . . and decided against that party . . . whether or not the tribunals or causes of action are the same."  *Tsirelman v. Daines*, 19 F. Supp.

---

[4] The plaintiff's cousin represented that the same "Senior Associate" who told him that VFC Partners was located in New York also told him that First City no longer exists and was not a party to the VFC Partners/Trimont merger. (ECF No. 59 ¶ 3.)

3d 438, 449 (E.D.N.Y. 2014) (quoting *Ryan v. N.Y. Tel. Co.*, 62 N.Y.2d 494, 500 (1984));

*Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015)

(issue preclusion "bars successive litigation of an issue of fact or law actually litigated and

resolved in a valid court determination essential to the prior judgment, even if the issue recurs in

the context of a different claim").

The defendant, as the party invoking collateral estoppel, bears the "burden of showing

that the issues are identical and were necessarily decided in the prior action," and the party

opposing its application bears the "burden of showing that the prior action did not afford a full

and fair opportunity to litigate the issues." *Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013)

(citation and quotation omitted).  To satisfy these requirements, the issue "must have been

properly raised by the pleadings or otherwise placed in issue and actually determined in the prior

proceeding." *Evans v. Ottimo*, 469 F.3d 278, 282 (2d Cir. 2006) (quoting *D'Arata v. New York

Cent. Mut. Fire Ins. Co.*, 76 N. Y.2d 659, 667 (N.Y. 1990)).

Many of the issues in the SAC are identical to the issues in the state action.  In his answer

and counterclaim to the foreclosure action, the plaintiff alleged that Greenpoint's assignment of

the mortgage to VFC Partners was invalid, that BNH lacked standing to foreclose because it

could not demonstrate that is was the legal owner of the mortgage, that the plaintiff did not

default on the loan and that BNH improperly accelerated the mortgage after dismissing the first

action.  (ECF No. 50-12 ¶¶ 6-15.)  Counts One through Five and Count Seven of the SAC raise

the same issues, albeit in greater detail.  (ECF No. 43 ¶¶ 46(a)-(e), (h)-(k).)  These issues were

addressed and resolved in the foreclosure action.  (*See* ECF 50-14 at 7-8.)  Moreover, the

plaintiff waived his right to challenge this decision when he agreed as part of a stipulation that he

would withdraw his appeal.  (*See* ECF No. 50-15.)

18

Although the plaintiff has suggested that the defendants exercised undue influence over the judicial proceedings (*see, e.g.*, SAC ¶¶ 37, 42, 46), he has not established that he was denied "a full and fair opportunity to litigate the issues" in the foreclosure action. *Proctor*, 715 F.3d at 414. Courts in New York consider various factors to determine whether a litigant had "a full and fair opportunity to litigate the issues," including:

> the nature of the forum and the importance of the claim in the prior litigation, the incentive and initiative to litigate and the actual extent of litigation, the competence and expertise of counsel, the availability of new evidence [and] the differences in the applicable law.

*Ryan*, 62 N.Y.2d at 501. The plaintiff had a full and fair opportunity to litigate the foreclosure action. The New York Supreme Court is experienced in handling foreclosure actions, the plaintiff had competent counsel during the majority of the substantive motion practice, the parties engaged in extensive motion practice and the plaintiff presents no new evidence to support his claims. *See Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 425 (S.D.N.Y. 2008).[5] Thus, Counts One, Two, Three, Four, Five, and Seven of the SAC are barred by collateral estoppel as to all defendants.

### 2. Res Judicata

"Under the doctrine of res judicata, or claim preclusion, 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action' to support or defend against the alleged cause of action." *Proctor*, 715 F.3d at 411 (alterations and citation omitted) (quoting *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). Federal courts have "consistently accorded preclusive effect

---

[5] Although the plaintiff initially appeared *pro se* in the state foreclosure actions, he obtained counsel in April of 2017, about a year after the action was filed. Notice of Appearance, *BNH Caleb 14 v. Jude E. Ozuzu, et al.*, Index No. 505322/2016 (Sup. Ct. N.Y. Apr. 19, 2017). The plaintiff's counsel assisted with the filing of the cross-motion for summary judgment and represented the plaintiff through at least October of 2019. (*See* ECF No. 50-15.)

19

to issues decided by state courts," and Congress has required federal courts "to give preclusive effect to state-court judgments whenever the courts from the State from which the judgments emerged would do so." *Allen v. McCurry*, 449 U.S. 90, 95-96 (1980) (citing 28 U.S.C. § 1738). Accordingly, I look to New York law to determine whether the plaintiff's claims are barred by *res judicata*. *See Harris ex relatione Harris v. BNC Mortgage, Inc.*, No. 16-CV-2126, 2017 WL 1166357, at *4 (E.D.N.Y. Mar. 28, 2017).

   In New York, "res judicata bars successive litigation of all claims based upon the same transaction or series of connected transactions if: (i) there is a judgment on the merits rendered by a court of competent jurisdiction, and (ii) the party against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was." *Sheffield v. Sheriff of Rockland County Sheriff Dep't*, 393 F. App'x 808, 811 (2d Cir. 2010) (alterations omitted) (quoting *People ex rel. Spitzer v. Applied Card Sys., Inc.*, 11 N.Y.3d 105, 122 (2008)).  New York applies a "transactional approach" to *res judicata*, which means that "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Yoon v. Fordham Univ. Faculty and Administrative Retirement Plan*, 263 F.3d 196, 200 (2d Cir. 2001) (quoting *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981)).

   Application of that standard to these facts requires dismissal of the plaintiff's claims alleging fraud and misrepresentation in the transfer, acceleration and foreclosure of the plaintiff's mortgage.  First, the state court's judgment of foreclosure and sale is an adjudication on the merits.  *See Harris*, 2017 WL 1166357, at *4 (the Second Circuit has held "that a judgment of foreclosure and sale in a state court action constitutes an adjudication on the merits for the purposes of claim preclusion.") (citing *Worthy-Pugh v. Deutsche Bank Nat'l Trust Co.*, 664 F.

App'x 20, 22 (2d Cir. 2016) and *De Masi v. Country Wide Home Loans*, 481 F. App'x 644, 645 (2d Cir. 2012)).  Second, Jude Ozuzu was the defendant in the state action and is the plaintiff in this action.

Finally, the plaintiff's claims of fraud and conspiracy, as well the GBL § 349 and the RICO claims arise out of the same series of transactions at issue in state court; the plaintiff makes the same arguments that the state court rejected—that the foreclosure was obtained through fraud and misrepresentation.  The state court examined the same facts regarding the assignments of the mortgage, the plaintiff's default and the acceleration of the mortgage that are before me today, and found that the plaintiff "has not offered any competent proof to demonstrate that the assignments and/or indorsements were defective or that [BNH] did not otherwise possess the note at the time the action was commenced."  (ECF No. 50-14 at 6-7.)  *Res judicata* bars the plaintiff from relitigating these same claims under new causes of action.  *See Borrani v. Nationstar Mortg. LLC*, No. 17-CV-9397, 2019 WL 1429982, at *12 (S.D.N.Y. Mar. 29, 2019), *aff'd*, 2020 WL 3721480 (2d Cir. July 7, 2020) (plaintiff's claims for violations of RICO, TILA, and RESPA were based on the same facts as the defenses in the underlying foreclosure action and were therefore barred by collateral estoppel and *res judicata*); *Fequiere*, 2016 WL 1057000, at *7 (*res judicata* barred claims alleging violations of RICO, FDCPA, CFPA, and RESPA because the claims were or could have been raised in the state court foreclosure action); *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 171 (E.D.N.Y. 2010) (the plaintiffs' RICO claims were barred because they were based on "the allegation that [the] defendants improperly obtained a Judgment of Foreclosure and Sale.").  Therefore, the plaintiff's claims alleging fraud, misrepresentation, unfair business practices and a RICO conspiracy to defraud the plaintiff of his ownership in the property are barred by *res judicata*.

Additionally, *res judicata* bars the claims alleged against Zubli in the fourth cause of action.  The plaintiff alleges that Zubli "fraudulently conspired with other defendants to defraud Plaintiff with respect to the note and mortgage executed with Greenpoint," "made false and fraudulent statements before a Federal District Court Judge," "exerted his influence to deceive and manipulate the judicial system and governmental agencies involved in Hurricane Sandy relief" and "willfully breached his fiduciary duty as an attorney."  (SAC ¶ 65-67, 69.)  To the extent these claims were not raised in the state foreclosure actions, they could have been raised in those actions as they are part of the same transactions at issue there—the assignment and acceleration of the mortgage and the foreclosure of the property.  *See Yoon*, 263 F.3d at 200; *Borrani*, 2019 WL 1429982, at *12.  Thus, the plaintiff's claims against Zubli must be dismissed.

### B.        Failure to State a Claim

The plaintiff's remaining claims, to the extent that they are not precluded, must be dismissed for failure to state a claim.

#### 1.  Fair Housing Act

The Sixth Cause of action alleges violations of the FHA.  (SAC ¶ 79.)  The SAC does not specify which defendant violated the FHA or how they violated it; the plaintiff merely states that the defendants "committed many indictable acts, such as mortgage fraud, mail fraud, wire fraud, and violations of the FDCPA and Fair Housing Act."  (*Id.* ¶ 99.)  Such a conclusory statement cannot sustain a claim for a violation of the FHA.  *See Iqbal*, 556 U.S. 662, 678 (citing *Twombly*, 550 U.S. at 555) ("threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" fail to state a plausible claim for relief).  Thus, the Sixth Cause of Action is dismissed for failure to state a claim.

### 2.    Breach of Fiduciary Duty

The Eighth Cause of Action alleges that Greenpoint breached the fiduciary duty that it owed to the plaintiff "in accordance with the terms of the note and mortgage." (SAC ¶ 85.) Under New York law, the elements of a claim for breach of fiduciary duty are: "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." *Barnett v. Countrywide Bank, FSB*, 60 F. Supp. 3d 379, 390 (E.D.N.Y. 2014) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011)).

The plaintiff's claim for breach of fiduciary duty against Greenpoint fails for several reasons.  First, the claim itself is conclusory and does not explain what duty Greenpoint owed the plaintiff or how Greenpoint "knowingly" breached that duty.  *See CIT Bank, N.A. v. Nwanganga*, 328 F. Supp. 3d 189, 200-01 (S.D.N.Y. 2018).  Second, except in specific circumstances not alleged here, a mortgage broker does not owe a fiduciary duty to a mortgagor under New York law.  *Iannuzzi v. Am. Mortg. Network, Inc.*, 727 F. Supp. 2d 125, 138 (E.D.N.Y. 2010) (collecting cases); *see also Bank Leumi Tr. Co. of New York v. Block 3102 Corp.*, 180 A.D.2d 588, 589 (1st Dep't 1992) ("The legal relationship between a borrower and a bank is a contractual one of debtor and creditor and does not create a fiduciary relationship between the bank and its borrower or its guarantors.").  Thus, Count Eight must be dismissed for failure to state a claim.

### 3.    Disaster Relief Act Claims

The Ninth Cause of Action seeks relief pursuant to the "Emergency Disaster Relief Act," 42 U.S.C. § 5170(a) (also known as the "Stafford Act").  (SAC ¶¶ 1, 90.)  The plaintiff claims that the defendants' "unlawful assignments and Zubli's acceleration of the mortgage" violated the Stafford Act because these actions caused the plaintiff to stop "receiving the insurance proceeds for repairs and restoration due to Sandy's devastation of the property."  (SAC ¶ 30.)

It is not clear what provision of the Stafford Act the plaintiff alleges that the defendants violated.  Section 5170(a) outlines the procedures by which the President can declare a state of emergency.  The Act also directs federal agencies to coordinate disaster relief efforts through grants and assistance to local governments, agreements with private contractors, and financial support to individual households, *see* 42 U.S.C. §§ 5170a-5174, and addresses the ability to recover for breach of contract or disaster relief, from the federal government.  42 U.S.C. § 5148. The Stafford Act gives the Attorney General the power to bring civil and criminal claims for the misuse of emergency funds.  *See* 42 U.S.C. § 5157.  It does not create a private right of action for individuals to sue other private entities for misuse of funds, as the plaintiff seeks to do here. Moreover, the plaintiff's claims appear to be predicated on the assignments of the mortgage and the acceleration of the mortgage by Zubli—issues that were decided in the state foreclosure action and are thus precluded for the reasons discussed above.

## V.    Leave to Amend

The Federal Rules of Civil Procedure provide that leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  However, a court "has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "Where dismissal is based on jurisdictional or *res judicata* grounds," amendment is futile because "the problem . . . is substantive and better pleading will not cure it."  *Francis v. Nichols*, No. 16-CV-1848, 2017 WL 1064719, at *8 (S.D.N.Y. Mar. 21, 2017) (quoting *MacKinnon v. City of N.Y.*, 580 Fed. App'x. 44, 46 (2d Cir. 2014)).

All of the plaintiff's claims, with the possible exception of the FHA claim, are barred by *Rooker-Feldman*, are precluded, or fail as a matter of law.  As to his FHA claim, the SAC fails to

24

allege any facts that suggest a possible, let alone plausible, violation of that statute, and the plaintiff offers no additional information that suggests he would be able cure the deficiencies with this claim.  (*See* ECF No. 59-3 at 27.)  Thus, amendment is futile and the plaintiff's request for leave to amend is denied.

## CONCLUSION

Because this Court does not have subject matter jurisdiction over the plaintiff's claims for injunctive relief, the plaintiff's motion for a preliminary injunction and a stay of the state court proceedings is denied.  VFC Partners' motion to dismiss is denied as to Rule 12(b)(4) and 12(b)(5), but is otherwise granted.  Defendants First City, McNair, and Moss are dismissed without prejudice pursuant to Rule 4(m).  The remaining defendants' motions to dismiss are granted in their entirety.  The Clerk of the Court is respectfully directed to close the case.

**SO ORDERED.**

s/Ann M. Donnelly
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
           September 23, 2020